IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| WADE ALLEN FRANKLIN, | : | |
| Plaintiff, | : | |
| v. | : | Case No. 3:21-cv-00039-CAR-CHW |
| DR NOWLIN, *et al.*, | : | |
| Defendants. | : | Proceedings Under 42 U.S.C. §1983 |
| | : | Before the U.S. Magistrate Judge |

## ORDER AND RECOMMENDATION

Before the Court are motions for summary judgment filed by the remaining Defendants. (Docs. 33, 37). Plaintiff did not respond to the motions. As discussed below, the undisputed facts show that Defendants were not deliberately indifferent to a serious medical need. For that reason, it is **RECOMMENDED** that Defendants' motions for summary judgment be **GRANTED**.

## BACKGROUND

This Section 1983 action relates to an alleged November 14, 2020 fall that Plaintiff sustained while returning to his Walton County Jail cell in handcuffs and shackles. (Doc. 1, p. 5). Plaintiff claims to have previously broken his ankle, which "never healed back correctly," such that Plaintiff "[has] to walk pretty much on the side of my foot with a limp." (*Id.*). In the weeks after his fall and ankle reinjury, Plaintiff claims that Defendants Nurse Butler, Nurse Cape,[1] Dr. Mwangi, and Dr. Nowlin provided inadequate medical care by offering only ibuprofen and Tylenol. According to Plaintiff, Defendants also refused to provide additional needed treatment due to cost concerns. *See* (Doc. 1, p. 6) ("I should not be denied proper medical care just because [the

---

[1] Plaintiff referred to Defendant Nurse Donald Cape as "Nurse Donald" in his complaint..

1

Defendants] said they are not going to spend any money"). Plaintiff also sued Walton County Sheriff Joe Chapman in his supervisory capacity, but the Court dismissed Sheriff Chapman from this action. (Docs. 39, 40). The remaining Defendants now move for summary judgment. (Docs. 33, 37).

## SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of informing the Court of the basis for its motion, and of citing "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that support summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In resolving motions for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).

Although Plaintiff failed to respond to the Defendants' motions for summary judgment, summary judgment is not properly awarded by default. S*ee Trs. of Central Pension Fund of Int'l Union of Operating Eng'rs and Participating Emp'rs*, 374 F.3d 1035, 1039 (11th Cir. 2004). Nevertheless, by failing to respond to the Defendants' motions, Plaintiff has failed to rebut the Defendants' statement of undisputed material facts, triggering consequences under both the Federal Rules of Civil Procedure and this Court's Local Rules.

Federal Rule of Civil Procedure 56(e)(2) provides that if a party "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion." Rule 56(e)(2). This Court's Local Rule 56 similarly provides: "All material facts contained in the movant's statement which are not specifically

controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." MDGA Local Rule 56. Finally, Federal Rule of Civil Procedure 56(e)(3) provides that the Court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to" summary judgment. Rule 56(e)(3). *See also Urdaneta v. Wells Fargo Bank, N.A.*, 734 F. App'x 701, 704 (11th Cir. 2018). Accordingly, because Defendants properly supported their factual assertions with specific citations to the record, and because Plaintiff failed to respond, the Defendants' facts may be accepted by the Court as undisputed.

## RELEVANT FACTS[2]

Plaintiff was incarcerated at Walton County Jail (Jail) from September 2018 through December 2018 and November 2020[3] through October 2021. (Docs. 33-1, ¶ 1, 12; 37-2, ¶ 4). When Plaintiff was processed to enter the jail in both September 2018 and October 2020, Jail nurses completed an intake screening that included taking Plaintiff's medical history and conducting a physical examination. (Docs. 33-1, ¶ 3; 37-2, p. 2 ¶ 5). During his first intake screening, Plaintiff did not report previously breaking his ankle or having any mobility issues.

---

[2] The summary of relevant facts is taken from Defendants' statements of undisputed material facts (Docs. 33-1, 37-2) and the accompanying affidavits (Docs. 33-5; 33-6; 37-2, p. 11-12). Defendants requested to file Plaintiff's medical records under seal (Doc. 34), and that motion was granted (Doc. 35). The records do not appear on the docket, however, even under seal, although the Defendants reference the records in their affidavits. The affiants' knowledge of the medical records provides an adequate basis to support Defendants' motions, especially in the absence of a challenge to the statements of fact by Plaintiff. Nevertheless, for completeness of the record and to assist in review of any objections that may be filed, Defendants are **ORDERED** to file the missing records under seal within seven days of the filing of this recommendation.

[3] Defendants Butler, Mwangi, and Nowlin's statement of undisputed material facts (Doc. 33-1) shows that Plaintiff's second incarceration began in October 2020 (*Id.*, ¶ 1) or November 2020 (*Id.*, ¶ 37). Defendant Cape's statement of facts (Doc. 37-2) shows that Plaintiff was rebooked at the Jail on November 6, 2020. (Id. ¶ 4). While this recommendation considers November 2020 as the beginning of Plaintiff's second incarceration, the date conflict need not be resolved because either date covers Plaintiff's alleged November 14, 2020 fall.

3

(Doc. 33-1, ¶¶ 4-5). At his second intake, Plaintiff disclosed no complaints or pain related to his ankle. (Doc. 37-2, p. 2, ¶ 6).

Although Plaintiff's 2018 medical treatment is not the subject of his current action, it provides context for treatment during his 2020-2021 incarceration. On October 15, 2018, shortly after his first incarceration began, Plaintiff requested treatment and x-rays for a painful broken ankle. (Doc. 33-1, ¶ 7). The next day, a nurse noted Plaintiff had a swollen right ankle and walked with a slight limp (*Id.*, ¶ 8). The nurse referred him to Defendant Nowlin, who examined Plaintiff the next day. (*Id.*, ¶ 9). During this examination, Plaintiff disclosed that he had broken his right ankle in 2016. (*Id*., ¶ 10). Defendant Nowlin noted no new trauma but ordered that x-rays be taken of Plaintiff's ankle. (*Id.*, ¶¶ 11-12). Two days before the scheduled x-rays, Plaintiff reported that he fell down the stairs at the jail, and he was taken by ambulance to the emergency room upon Defendant Nowlin's approval. (*Id.*, ¶¶ 12-15). Plaintiff had several injuries, including a closed dislocation of the right ankle that was reduced at the hospital and treated with ibuprofen. (*Id.,* ¶¶ 17, 19). Plaintiff reentered general population at the Jail after an examination, which showed Plaintiff had mild swelling and a "limping but steady" gait. (*Id.,* ¶¶ 22-23). Plaintiff still had the previously ordered x-rays, which showed no acute fracture or dislocation. (*Id.,* ¶ 24, 26).

Five days later, Plaintiff requested a sick call visit citing complaints that "every time [he moved] his foot, the bone [poked] out through a [his] skin." (*Id.,* ¶ 27). The nurse saw no such issue, but Plaintiff was referred again to Defendant Nowlin. (*Id.,* ¶ 28). Defendant Nowlin believed that Plaintiff had a bony deformity from his 2016 injury and that the recent fall had reinjured the ankle. (*Id.,* ¶ 29). Defendant Nowlin ordered another x-ray and prescribed Motrin, but Plaintiff later refused both forms of treatment. (*Id.,* ¶¶ 31-33). At a follow-up appointment on November 20, 2018, Plaintiff's gait was "stable and strong." (*Id.,* ¶ 34).

4

When Plaintiff was booked into the Jail again in November 2020, Defendant Cape performed the intake medical screening. (*Id.,* ¶ 37; Doc. 37-2, p. 2, ¶ 5). Defendant Cape noted no musculoskeletal complaints. Plaintiff was not in pain, and his gait was within normal limits. (Docs. 33-1, ¶¶ 38-40; 37-2, p. 2, ¶ 6). Plaintiff's records do not reflect a fall or ankle injury on November 14, 2020. (Doc. 37-2, p. 2, ¶ 7). However, Plaintiff requested a sick call on January 21, 2021, for a twisted ankle. (Docs. 33-1, ¶¶ 42-43; 37-2, p. 2, ¶ 8). Defendant Mwangi, a nurse practitioner, saw Plaintiff on January 26, 2021. (Docs. 33-1, ¶ 45). At this visit, Plaintiff presented in a wheelchair and reported chronic right ankle pain. (*Id.*, ¶ 46). Defendant Mwangi ordered Tylenol for Plaintiff's pain. (*Id.*, ¶ 47). On February 3, 2021, when Plaintiff saw Defendant Mwangi again, Plaintiff was not in a wheelchair and reported twisting his ankle two weeks before the visit. (*Id.*, ¶¶ 48-49). Plaintiff reported shooting ankle pain and displayed a limping gait. (*Id.*, ¶ 50). Defendant Mwangi ordered x-rays of Plaintiff's ankle and added ibuprofen to Plaintiff's medications. (*Id.*, ¶ 51). The x-rays revealed no fracture but showed mild degenerative joint disease, a chronic condition, which was unchanged compared to Plaintiff's October 2018 x-rays. (*Id.*, ¶¶ 52-53, 55-56, 92). Defendant Mwangi reviewed the x-rays, confirmed that Plaintiff's foot and ankle were not fractured, and noted the degenerative changes. (*Id.*, ¶¶ 57, 59). Plaintiff's gait was "smooth and fluid" on February 17, 2021, but Defendant Mwangi continued Plaintiff's ibuprofen prescription because he continued to have pain. (*Id.*, ¶¶ 57-58, 60).

Plaintiff saw Defendant Nowlin twice in early March 2021, and Plaintiff was not limping and displayed a normal gain. (*Id.*, ¶¶ 61-62). Defendant Nowlin reviewed Plaintiff's x-rays and found that they showed Plaintiff had osteoarthritis and a long-standing bony deformity in his ankle. (*Id.*, ¶ 63). On March 20, 2021, Plaintiff asked for another medical appointment because he had fallen due to his injured ankle and because the medications were not helping his pain. (*Id.*, ¶¶ 65-

5

66). Ten days later, Defendant Mwangi examined Plaintiff based on complaints of right ankle pain with swelling related to a fall that happened two months before the appointment. (*Id.*, ¶ 31). The examination confirmed the bony deformity but showed no swelling. (*Id.*, ¶ 69). Plaintiff walked with a slight limp. (*Id.*, ¶ 70). When Plaintiff saw Defendant Mwangi on April 20, 2021, Mwangi again noted that the x-rays showed no acute fracture. (*Id.*, ¶ 74). Plaintiff was given a "soft shoe" and a referral to an orthopedist. (*Id.*, ¶ 75).

Plaintiff saw an off-site orthopedist for his ankle on May 28, 2021. (*Id.*, ¶ 76). After diagnosing Plaintiff with osteoarthritis, the orthopedist gave Plaintiff a steroid injection and prescribed Mobic and a foot brace, which were then provided to Plaintiff at the Jail. (*Id.*, ¶¶ 76-78). No surgery was recommended. (*Id.*, ¶ 79). After the orthopedist visit, Defendant Nowlin saw Plaintiff at the Jail in June 2021. (*Id.*, ¶¶ 80-81). An August 2021 visit showed that Plaintiff had been given an ankle wrap. (*Id.*, ¶ 82). Plaintiff refused medical appointments in September and October 2021 before he was released. (*Id.*, ¶¶ 84-85).

Defendant Butler, a registered nurse, served as the Health Services Administrator at the Jail. (Doc. 33-6, ¶¶ 3-5). She never treated Plaintiff for his ankle, and he never made any complaints to her. (*Id.*, ¶¶ 6-7). In her role, she was unable to prescribe medication, order x-rays, or refer Plaintiff to off-site medical providers. (*Id.*, ¶¶ 10-12). Defendant Butler's last day at the Jail was February 26, 2021. (*Id.*, ¶ 3).

Like Defendant Butler, Defendant Cape was unable to prescribe medication, order x-rays, or make off-site referrals. (Doc. 37-2, p. 3, ¶ 17). Neither Defendant Butler nor Cape said that Plaintiff's treatment would be withheld because of cost. (Docs. 33-6, ¶ 8; 37-2, p. 4, ¶ 21).

**ANALYSIS**

Plaintiff alleges in his complaint that Defendants acted with deliberate indifference by treating his ankle injury and pain with Tylenol and ibuprofen and by refusing to provide treatment because of cost. The undisputed facts do not show that any Defendant acted with deliberate indifference to a serious medical need, where the record shows that Plaintiff's condition did not constitute a serious medical need, that Plaintiff did receive extensive medical treatment, and that no conduct by any Defendant caused Plaintiff's injury.

To establish a deliberate indifference claim, Plaintiff "must establish (1) a serious medical need; (2) [Defendants'] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Ross v. Corizon Med. Servs.*, 700 F. App'x 914, 916 (11th Cir. 2017) (citing *Mann v. Taser Int'l Inc.* 588 F.3d 1291, 1306-1307 (11th Cir. 2009)). As explained in the Court's screening order, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotations and citations omitted). "The medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Id.*; *see also Mann*, 588 F.3d at 1307 (explaining that a delay which worsens the condition can also be a serious medical need). As to the second prong, "[P]laintiff must demonstrate '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.'" *Id.* (citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). As discussed below, the undisputed facts show that no Defendant acted with deliberate indifference to a serious medical need.

1. <u>Plaintiff's ankle condition does not constitute a serious medical need</u>.

To establish a claim of deliberate indifference, Plaintiff mush show that his ankle injury

and subsequent pain constitute a serious medical need. Plaintiff could also make this showing if a delay in treatment worsened his condition. Under the undisputed facts of this case, Plaintiff is unable to establish this prong because there is no evidence of an ankle injury or related pain which went untreated and would equate to a serious medical need.

      Construed most favorably to Plaintiff, the facts show that Plaintiff broke his ankle in 2016 and reinjured it when he suffered a closed dislocation in 2018. The 2018 closed dislocation was repaired without surgery before Plaintiff returned to the Jail in 2020. (Doc. 33-5, ¶ 8). While Plaintiff alleges that he reinjured his ankle in a November 14, 2020 fall at the Jail, nothing in the record establishes such an event. Plaintiff had no ankle pain and no mobility issues at his intake screening on November 6, 2020. Plaintiff did not complain about an ankle injury or pain until January 21, 2021, when he was seen by Defendant Mwangi. Defendant Mwangi provided pain relievers and ordered x-rays. The x-rays revealed no fracture but instead showed a pre-existing bony deformity and mild degenerative changes consistent with osteoarthritis. Defendant Nowlin confirmed the x-ray reading and treated Plaintiff twice in March 2021. Plaintiff's gait was normal. When Plaintiff continued to complain, he received a soft shoe brace and was referred to an off-site orthopedist in May 2021. The orthopedist gave the same osteoarthritis diagnosis that Defendant Nowlin had given. Plaintiff received a steroid injection, additional NSAID pain medications, and a brace. No surgery was recommended as part of this treatment.

      Under certain circumstances, untreated pain can constitute a serious medical need, but the record does not support such a claim here. "Severe pain that is not promptly or adequately treated can also constitute a serious medical need depending on the circumstances, [but the pain] must be objectively so severe that the failure to treat it deprives [Plaintiff] 'of the minimal civilized measure of life's necessities.'" *Brennan v. Thomas*, 780 F. App'x 813, 820 (11th Cir. 2019) (internal

citations omitted). The objective evidence shows Plaintiff's pain likely resulted from chronic degenerative changes and that the pain was not ignored. Defendant Nowlin acknowledges that Plaintiff continued to experience pain following the outside orthopedist appointment, but nothing in the record suggests that any Defendant ignored or refused to treat Plaintiff's pain. Plaintiff received treatment on multiple occasions. Moreover, Plaintiff was offered sick calls for his complaints of pain, although Plaintiff refused some of these appointments.

The record does not support a claim that Plaintiff suffered an ankle injury from a fall on November 14, 2020, that mandated treatment. Additionally, Plaintiff's pain and subsequent treatment did not rise to the required level to be considered a serious medical need. No action or inaction by Defendants deprived Plaintiff "of the minimal civilized measure of life's necessities." The undisputed facts, construed in the light most favorable to Plaintiff, do not show his ankle condition constituted a serious medical need.

2. Plaintiff received medical treatment for his ankle, and he cannot show deliberate indifference to his condition.

Even if Plaintiff's ankle condition and pain constituted a serious medical need, Plaintiff's claims would fail on the deliberate indifference prong. The record does not show that any Defendant disregarded Plaintiff's condition or acted with conduct that amounts to more than mere negligence.

Defendants Nowlin and Mwangi repeatedly treated Plaintiff for his ankle in several ways. They recommended x-rays and NSAID pain relievers, referred him to an outside orthopedist, and complied with that orthopedist's recommended treatment. Nothing in the record suggests that Defendant Nowlin or Mwangi withheld any recommended treatment from Plaintiff or refused to treat him. Instead, the record shows they repeatedly examined Plaintiff and provided treatment for his reported pain.

9

The record does not support any allegation that Defendant Nowlin or Mwangi acted negligently, much less in a way that was more than negligent, as required to show deliberate indifference. Plaintiff's complaint demonstrates that he disagreed with Defendants Nowlin and Mwangi for treating his pain with Tylenol and ibuprofen, but such a disagreement cannot support a showing of deliberate indifference. "A 'complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment.'" *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Nothing suggests the care given to Plaintiff by Defendants Nowlin or Mwangi was grossly inadequate, easier but less effective compared to other treatments, or amounted to no treatment at all. *Bingham*, 654 F.3d at 1176. The undisputed record, construed in the light most favorable to Plaintiff, fails to show that Defendants Nowlin and Mwangi acted with deliberate indifference.

The record fails to provide any basis for finding that Defendant Cape or Defendant Butler had potential subjective knowledge of Plaintiff's ankle condition. The one time that Defendant Cape interacted with Plaintiff, Plaintiff made no complaints of injury or pain. Defendant Butler's position at the Jail was not one where she would have treated Plaintiff's ankle pain. Instead, Plaintiff alleges that Cape and Butler showed deliberate indifference to his pain by suggesting that he would not receive treatment due to costs. Such a statement could constitute evidence of deliberate indifference. *Id*. (stating that "[a] complete denial of readily available treatment" or "[delaying] necessary treatment for non-medical reasons may exhibit deliberate indifference").

Both Defendants Butler and Cape deny telling Plaintiff he would not receive treatment because of costs. Nothing in the record suggests that surgery, or any other presumptively expensive treatment, was a recommended treatment for Plaintiff's ankle. Even if there were, the record

10

specifically undermines Plaintiff's claims as to Defendant Butler because she was not employed at the Jail when she allegedly made the statement. Moreover, even if such statements were made and there was other recommended treatment, the record shows that neither Defendant Butler nor Cape would have been the ultimate decisionmakers as to any specific treatment plan. Ultimately, the record is devoid of any evidence that Plaintiff was refused treatment for any reason, much less because of expense, and Plaintiff cannot show any deliberate indifference on the part of Defendants Butler and Cape.

3. No action or inaction by Defendants caused or exacerbated Plaintiff's injury.

To show deliberate indifference to a serious medical need, Plaintiff would lastly need to show a causal link between any indifference and his injury. There is no evidence in the record to show that Defendants caused Plaintiff's injury or prolonged his pain. The record shows that Plaintiff originally broke his ankle in 2016 and reinjured it in 2018. Through their examination of Plaintiff and upon review Plaintiff's x-rays, Defendants Nowlin and Mwangi found Plaintiff to have a bony deformity, degenerative changes, and osteoarthritis, but no acute fracture. Plaintiff has not alleged, and it is doubtful he could prove, that Defendants acted in any way to cause or exacerbate these conditions. Even if the record supported all the other necessary elements of a claim for deliberate indifference to a serious medical need, therefore, Plaintiff would not be able to prove such indifference caused him any injury.

## CONCLUSION

Because the undisputed facts do not support Plaintiff's deliberate indifference claims, it is **RECOMMENDED** that Defendants' motions for summary judgment (Docs. 33, 37) be **GRANTED**.

## **OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the presiding District Judge **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Any objection is limited in length to **TWENTY (20) PAGES.** *See* M.D. Ga. L.R. 7.4. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 25th day of October, 2022.

s/ Charles H. Weigle<br>
Charles H. Weigle<br>
United States Magistrate Judge